UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| OSCAR PAIZ, | ) | No. CV 05-03712-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR"). The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

Plaintiff's first assertion of error is that the Administrative

1  Law Judge ("ALJ") erred in failing to properly account for the opinion
2  of Dr. Fuerst, an ophthalmologist who conducted a consultative
3  examination ("CE") on July 25, 2002.  In particular, Plaintiff points
4  out that Dr. Fuerst found that he has a limited field of vision in
5  both his left and right eyes. (Motion at 4, citing AR 166-167.)  The
6  ALJ found that Plaintiff is capable of performing his past relevant
7  work as a courier.  Plaintiff notes that under the DOT classification
8  of Code 230.663-010, this job requires frequent field of vision
9  (Motion at 5, citing AR 355-357); thus, he asserts that the ALJ erred
10 in finding him capable of performing his past relevant work.  Citing
11 Lester v. Chater, 81 F.3d 821, 830-832 (9th Cir. 1995), Plaintiff
12 argues that the ALJ's failure to even address the question of his
13 deficiencies in his field of vision constitutes error.
14     The Commissioner points to other evidence in the record which
15 supports the ALJ's conclusion that Plaintiff does not have a severe
16 visual impairment. (See AR at 27.)  The Commissioner notes that,
17 shortly after Dr. Fuerst's examination of Plaintiff, his records were
18 examined by a State Agency consulting physician who noted that the
19 restriction in the visual fields was inconsistent with the ocular
20 pathology (cataracts) found during Dr. Fuerst's examination. (See AR
21 at 162-163.)  This physician recommended that Dr. Fuerst be contacted
22 since it might be that the decreased visual fields were due to the
23 blepharitis which Dr. Fuerst diagnosed.  The physician opined that
24 such a condition could be improved with medication. (AR 162.)  Indeed,
25 Dr. Fuerst was recontacted by the assigned analyst, who noted,
26 following a telephone conversation with Dr. Fuerst, that the physician
27 reported no pathological findings for Plaintiff, and that the
28 abnormality of the visual field results was due to the fact that

1 Plaintiff is "slow." (AR 118.)

2 Plaintiff's eyes were examined at an eye clinic on August 14, 2002. (AR 231.) At that time, based on findings of refractive errors in both eyes, he was presented bifocals, and was set for a one-year follow up. (Id.) Plaintiff received another ophthalmological CE on April 14, 2004, at which time Plaintiff's visual acuity was 20/20 in both eyes when corrected with glasses, and Plaintiff could visually move around the office without any help. (AR 332.) The internal medicine CE performed on this date revealed that Plaintiff's vision is intact in both eyes. (AR 326.)

Finally, Plaintiff testified that he has not had his cataracts removed. (AR 401.) This would lead to a fair inference that the failure to obtain treatment would discredit any subjective complaints regarding vision, although Plaintiff in fact provided statements on numerous occasions that he continued to drive a car, and only stopped because of problems with payment of automobile insurance. (AR 113, 267, 379-80); see Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)(lack of treatment may be considered to discount subjective complaints).

Plaintiff argues that this evidence should not be considered because it was not explicitly discussed by the ALJ in his opinion. While Plaintiff is correct that a reviewing Court may not speculate on the reasons underlying an ALJ's decision, if they are not articulated in the decision (see Cequerra v. Secretary of Health and Human Services, 933 F.2d 735, 738 (9th Cir. 1991)), what Plaintiff has focused on are test results reported by Dr. Fuerst which have caused no apparent functional limitations. For Social Security disability purposes, evidence in the record must establish an impairment that is

3

1 disabling. An ALJ is not required to discuss each and every test
2 result reported by a physician. If this were the case, an ALJ's
3 written decision could easily approach, in length and complexity, the
4 Administrative Record itself.
5 　　　For the foregoing reasons, the Court finds that Plaintiff is not
6 entitled to a reversal or remand on the issue of his asserted visual
7 impairment.
8 　　　Plaintiff's second contention is that the ALJ did not properly
9 consider physical limitations on his ability to engage in work
10 activity. The focus here is on a work injury which Plaintiff
11 sustained on July 1, 1998 to his left knee. After his symptoms
12 gradually worsened, he underwent arthroscopic surgery on that knee on
13 January 10, 2000. (AR 312.) On February 14, 2000, Plaintiff was
14 examined by Dr. Nagelberg, a board certified orthopedic surgeon, in
15 connection with his Workers Compensation case. (AR 311-317.)
16 Plaintiff complained of continuous pain in his left in his left knee,
17 accompanied by swelling, instability and popping in the left knee.
18 Plaintiff asserted that he walked with an uneven gait, and that his
19 pain increases with prolonged walking or standing, flexing or
20 extending the knee. He asserted an inability to squat, stoop or
21 kneel, and reported that he utilizes a cane for support. (AR 313.)
22 Dr. Nagelberg's examination revealed slight soft tissue swelling along
23 with medial and lateral joint line tenderness, and a somewhat reduced
24 range of motion in the knees. He found no evidence of instability.
25 On x-ray of the left knee, no significant abnormalities were noted.
26 (AR 314.) Dr. Nagelberg again examined Plaintiff on June 22, 2000 for
27 an orthopedic reevaluation. Plaintiff again complained of persistent
28 pain in his left knee. On examination, no swelling was present and

4

there was a full range of motion of the knee. There was no significant medial or lateral instability. (AR 318.) Dr. Nagelberg recommended a work restriction to preclude heavy lifting and any kneeling, squatting or climbing, and asserted that Plaintiff should be allowed to sit or stand throughout the workday based upon his pain level. (AR 320.)

At the hearing, the ALJ indicated that he was not going to accept Dr. Nagelberg's exam because it was three years old, without first obtaining an orthopedic examination. (AR 405.)[1]

Pursuant to the ALJ's order, Plaintiff was examined by Dr. Sedgh on April 14, 2004. (AR 322-327.)[2]

Dr. Sedgh performed a comprehensive examination, and did review

---

[1] Plaintiff alleges that the ALJ's statement at the hearing, "I'm not going to accept a worker's comp exam that's three years old without the other side" (AR 405), evidences bias. The Court finds that taken in context, the ALJ simply determined that because the examinations of Dr. Nagelberg were three years old, an updated CE was necessary. Plaintiff has failed to establish that this isolated comment constitutes evidence of bias. See Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001).

[2] Plaintiff also asserts that more weight should be given to the opinion of Dr. Nagelberg because he was both a treating physician and an orthopedic specialist, while Dr. Sedgh in an internist. For several reasons, the Court declines to follow Plaintiff's suggestion. First, when the issue came up at the hearing, Plaintiff's counsel specifically requested examination by an internist, although the ALJ was inclined to have an orthopedic examination performed. (AR 405-06.) Plaintiff cannot be now heard to complain about the asserted inferiority of Dr. Sedgh's opinion based on his lack of specialization when Plaintiff specifically requested such a specialist. Moreover, specialization is only one of several factors to be considered in weighing various medical opinions. See 20 C.F.R. §§404.1527(d), 416.927(d) (2005). Finally, for reasons which the Court will discuss in its opinion, there are independent reasons for validating Dr. Sedgh's opinion.

Dr. Nagelberg's report, among other reports.[3] Upon examination, Dr. Sedgh found no evidence of inflammation or deformity; some evidence of crepitation in both knees, and a slightly decreased range of motion in the left knee. (AR 325.)  The left knee x-ray was normal. (AR 326.) Based on his examination, Dr. Sedgh reported evidence of crepitation in both knees; slightly decreased range of motion of the left knee; motor strength in the left knee and left lower extremity slightly decreased.  He also handwrote on his report that "[Plaintiff] does not need a cane as assistent [sic] device." (AR 327.)  From a functional standpoint, Dr. Sedgh determined that Plaintiff is capable of carrying and lifting 20 pounds occasionally and 10 pounds frequently, that he can stand, walk and sit for six hours in an eight-hour day, and that kneeling, crouching and stooping should be limited to occasional. (Id.)

The ALJ thoroughly reviewed both of Dr. Nagelberg's reports from the two examinations he performed. (AR 25.)  He also thoroughly reviewed the report prepared by Dr. Sedgh, and reached conclusions as to functional limitations and abilities consistent with Dr. Sedgh's findings. (AR 26-27, 29, Finding 6.)

Plaintiff agrees that the findings of Drs. Nagelberg and Sedgh are not inconsistent. (JS at 12.)  Both physicians found that Plaintiff is unable to perform heavy lifting, kneeling, squatting or climbing. (AR 320, 327.)  Dr. Sedgh agreed that Plaintiff has a decreased range of motion and decreased motor strength in his left knee.  Again, the two physicians are not inconsistent in their findings.  Further, there is no significant difference in the

---

[3] Dr. Sedgh refers to Dr. Nagelberg in his report as Dr. "Niklaber." (AR 323.)

6

1  recommendation of Dr. Nagelberg that Plaintiff should be allowed to
2  stand or sit throughout the workday based on his pain level, and Dr.
3  Sedgh's conclusion that Plaintiff is able to stand, walk and sit for
4  six hours in an eight-hour day. (AR 320, 327.)  To the extent that Dr.
5  Nagelberg used terms of art which are pertinent to Worker's
6  Compensation law, rather than to Social Security disability law, the
7  ALJ was free to find Dr. Nagelberg's opinions to be not conclusive.
8  See Macri v. Chater, 93 F.3d 540, 543-44 (9th Cir. 1996).  To the
9  extent that there are any slight differences between the opinions of
10 the two physicians, the ALJ resolved any such differences pursuant to
11 her assigned role.  See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th
12 Cir. 1995).  Finally, it is pertinent to note, as the Commissioner
13 points out, that Dr. Nagelberg's report was prepared only five months
14 after Plaintiff had arthroscopic knee surgery.  Under the Social
15 Security Act, an impairment must be disabling on a continuous level
16 for a period of 12 months. (See 42 U.S.C. §423(d)(2).)  By the time
17 Plaintiff received the later examinations discussed by the ALJ and in
18 this Opinion, his condition had stabilized substantially, and there is
19 no evidence that he had disabling functional limitations with regard
20 to his left knee.  For this reason, Plaintiff's second issue does not
21 merit reversal or remand.

22      Plaintiff's third and final issue is that the ALJ improperly
23 discredited his subjective pain complaints. In the ALJ's decision, she
24 detracted from Plaintiff's credibility "in light of the degree of
25 medical treatment required, discrepancies between the [Plaintiff's]
26 assertions and information contained in the documentary reports, the
27 reports of treating and examining practitioners and the findings made
28 on examination." (AR 27.)  Plaintiff asserts that this finding fails

1  to provide specificity embodied in an articulation of clear and
2  convincing reasons required by Smolen v. Chater, 80 F.3d 1273, 1281
3  (9th Cir. 1996).
4      While Plaintiff casts the ALJ's decision on credibility as
5  improperly founded solely on contradictions between Plaintiff's
6  complaints and the objective medical evidence (which indeed would be
7  forbidden), that does not appear to be the case.  Certainly, the
8  existence of a conflict between subjective complaints and medical
9  evidence is one relevant factor, although it is not sufficient in and
10 of itself.  The Commissioner cites several additional reasons in the
11 JS.  She notes that Plaintiff came to his appointment with Dr. Sedgh
12 indicating that he used an assistive device.  There is in fact no
13 evidence that Plaintiff misreported the fact that he had been
14 prescribed the use of a cane following his surgery, which in fact is
15 what he reported to Dr. Sedgh. (See AR at 322.)  In this respect, the
16 Court finds the issue of the use of the cane to be irrelevant to the
17 credibility analysis.  Despite that, it would appear that the
18 objective medical evidence does not support the existence of the
19 extreme knee pain and accompanying functional limitations which
20 Plaintiff asserted in the record.  First, there is no evidence of any
21 use of pain medications stronger that Ibuprofen or Motrin.  It does
22 not appear that Plaintiff lacked access to medical facilities, and it
23 is one relevant factor to consider (that is, the use of minimal
24 treatment to address claims of significant pain) in the credibility
25 analysis.  Similarly, the ALJ's reference to contradictions between
26 Plaintiff's assertions and the information in the documentary record
27 is borne out by the fact that on at least three occasions when
28 Plaintiff was examined, he failed to make any complaints about his

1 | knee pain. (See AR at 280, 278, 279.)

2 | It is also the case that Dr. Sedgh did factor Plaintiff's pain
3 | complaints into his functional assessments, based on his own testing
4 | and examination, and his observation of Plaintiff's "spontaneous
5 | actions." (AR 324.)

6 | Finally, the record indicates that there are material
7 | contradictions between Plaintiff's testimony at the hearing that he
8 | could only stand for ten minutes with his report on his Daily
9 | Activities Questionnaire and his Pain Questionnaire. (See AR at 112,
10 | 117.)

11 | Considering the record as a whole, while the Court believes that
12 | the ALJ's decision could have been somewhat more articulate with
13 | regard to her credibility determination, the Court has considered the
14 | decision as a whole. For example, a general reference made in the
15 | credibility portion of the decision to Plaintiff's assertions and
16 | information contained in the documentary reports, must be read in
17 | conjunction with the decision as a whole, which does make specific
18 | reference to these contradictions. For these reasons, the Court finds
19 | that the credibility assessment made by the ALJ is supported by clear
20 | and convincing reasons and does meet the standards articulated in the
21 | regulations and the applicable cases as to credibility findings.
22 | //
23 | //
24 | //
25 | //
26 | //
27 | //
28 | //

For the foregoing reasons, the Court affirms the decision of the Commissioner, denies Plaintiff's Motion for Summary Judgment, grants Defendant's Cross-Motion for Summary Judgment, and orders that this matter be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED:  February 23, 2006

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE